OPINION
Appellant, Edward Lyons, appeals his conviction in the Lake County Court of Common Pleas on one count of possession of LSD, in violation of R.C. 2925.11, a felony of the fifth degree. The following facts are relevant to a determination of this appeal.
In the early morning hours of August 31, 1998, appellant and Aaron Overberger were playing video games at a friend's house in Madison Township, Ohio. At approximately 3:00 a.m., the friend's grandmother, who also lived in the house, asked all the visitors to leave. Appellant and Overberger asked their friend for permission to sleep in appellant's car, parked behind a garage on the property. They were given permission and did, in fact, fall asleep in appellant's automobile.
At approximately 9:00 a.m., six hours later, Madison Township Police Officer Timothy Doyle received a complaint from a local resident that two men were sleeping in a vehicle behind a garage at a township location. Ptl. Doyle went to investigate the report and saw the vehicle, a 1989 Pontiac Grand Am, on private property behind the garage, just as the citizen had reported. It is not clear from the record whether Ptl. Doyle was alone or if he was accompanied by another policeman, Officer Proud. If he was alone at first, however, he was joined shortly thereafter by the other officer.
Ptl. Doyle testified that he parked his police cruiser so as to block the escape path for the Pontiac. Ptl. Doyle approached the Pontiac and noticed two males either asleep or "passed out" in the front seat. He also noticed a large quantity of home stereo equipment in the back seat. Additionally, he noticed that the steering column was "peeled," so that a key would not be necessary to start the vehicle. This was common on automobiles that had been stolen, according to Ptl. Doyle.
Ptl. Doyle woke both appellant and Overberger, requested identification from them, and asked them what they were doing on the property. Overberger initially identified himself as Samuel Eddington, which soon thereafter was determined to be false. Ptl. Doyle learned his true identity and discovered that a misdemeanor warrant was out for Overberger's arrest. Appellant properly identified himself. As to why they were on the property in question, Ptl. Doyle stated that the suspects' answers were "evasive." In response to the officer's other questions, Overberger stated that the stereo equipment belonged to him and he was preparing to return to college in Athens, Ohio. Appellant stated that the steering column was intentionally altered because he had, at one time, lost the key for the automobile.
Upon learning of the warrant for Overberger, Ptl. Doyle put him in the back seat of his police car. At that point, the officer learned that the license plates on the Pontiac were properly registered in appellant's name and belonged on a 1989 Pontiac Grand Am which matched the description of the car appellant had been sleeping in. At that time, however, the officer did not check the vehicle identification number (VIN) to see if the license plates matched the car. A simple check would have confirmed that it was, in fact, appellant's car with proper license plates. Nor did Ptl. Doyle check with the owner of the property to confirm or refute appellant's claim that he and Overberger had permission to be on the property.
Nevertheless, Ptl. Doyle returned to appellant's vehicle and asked appellant to step out of the car. Appellant complied with the request. The officer admitted that if appellant had denied his request, he would have demanded that appellant exit the vehicle. Ptl. Doyle then asked for appellant's permission to search the car. Ptl. Doyle claimed that appellant consented to the search and signed a consent form at his request. Appellant stated, however, that he believed he did not actually have a choice in the matter as Ptl. Doyle told him that the car would be searched with or without his permission with the use of dogs after the issuance of a search warrant. Appellant signed a standardized "permission to search" form. Appellant was subjected to a pat-down search and placed in the back seat of the police cruiser.
Ptl. Doyle proceeded to search appellant's vehicle, finding what he believed to be two hits of LSD. Appellant confirmed the officer's suspicion that the contraband was LSD, but initially denied ownership of the drugs. Appellant was transported to the police department where he was read his rights. Subsequently, he admitted that the LSD was for his own use.
On December 4, 1998, appellant was indicted by the Lake County Grand Jury on one count of possession of LSD. On January 11, 1999, appellant filed a motion to suppress with the trial court. A suppression hearing was conducted by the trial court on January 25, 1999. On February 12, 1999, the trial court overruled appellant's motion, resulting in appellant pleading no contest to the charge on February 22, 1999. Appellant was found guilty and sentenced to three years of community control with certain sanctions and conditions. He was also given thirty days in jail with work release privileges. After violating one of the conditions of his community control, appellant was sentenced to forty-five days in the Lake County Jail to be served concurrently with his thirty-day sentence. Appellant timely filed a notice of appeal from his original conviction and sentence. Appellant has now set forth the following assignment of error:
 "The trial court erred to the prejudice of the defendant-appellant when it denied his motion to suppress evidence obtained as a result of an illegal search and seizure."
In his sole assignment of error, appellant contends that the trial court erred when it denied his motion to suppress evidence which was obtained as a result of an illegal search and seizure. Within his assigned error, appellant has set forth five specific arguments to support his contention that the trial court erred.
First, appellant claims that once the initial reasons for the investigative stop had been completed, absent any indicia of unlawful activity, his further detention violated his right against unreasonable search and seizure as guaranteed by the Ohio and United States Constitutions. We agree.
Without consent, an officer needs probable cause that a crime has occurred before a search can be conducted. Florida v.Royer (1983), 460 U.S. 491, 497. In the present case, the police officers may have initially had a good faith belief that some crime had occurred. There were two males, sleeping or "passed out" in an automobile behind a garage, in the vicinity of where car stereo equipment had been stolen, in a car with a peeled steering column, and stereo equipment in the back seat. While there was initially an abundance of suspicious circumstances surrounding these two suspects, each suspicion was dispelled prior to the search of the automobile. The car was discovered to actually belong to appellant and the stereo equipment was for a home audio system rather than a car audio system. At that point in time, appellant should have been free to go. Probable cause that a crime had been committed no longer existed.
This case is quite similar to another case decided by this court, State v. Vanderhoff (1995), 106 Ohio App.3d 21. InVanderhoff, the defendant was the driver of an automobile parked on a street in a residential neighborhood with two passengers. A police officer responded to a citizen's tip that a car with three males had been parked on the street for an extended period of time with its lights off. The officer approached the car and asked for identification. One of the passengers was arrested after it was discovered that he had outstanding felony warrants. Although the officer knew that the defendant had no outstanding warrants, he requested a search of the vehicle. The defendant approved the search which revealed a handgun under the driver's seat. This court held that the search was illegal and the defendant's motion to suppress should have been granted.
Similarly, in the instant cause, once the officers' suspicion of criminal activity was dispelled, appellant should have been free to go. Thus, the search should not have been conducted and the contraband seized should have been suppressed.
Next, appellant asserts that the search of his automobile was unlawful as he did not voluntarily consent to the search, and there was no search warrant. We agree. The general rule is that a warrant supported by probable cause is needed in order for a search to occur. However, a warrantless search may be conducted if an exception to the warrant requirement exists.Schneckloth v. Bustamonte (1973), 412 U.S. 218, 219. For example, a warrantless search does not violate the Fourth or Fourteenth Amendments if it is performed with the voluntary consent of the person whose privacy rights are at issue. Id. Additionally, voluntariness is a question of fact to be determined by considering the totality of the circumstances. Id. at 248-249. Furthermore, consent must be shown to have been freely and voluntarily given by "clear and positive" evidence, and the burden is on the state to demonstrate such consent. State v. Posey
(1988), 40 Ohio St.3d 420, 427, citing Bumper v. North Carolina
(1968), 391 U.S. 543, 548. That burden is "not satisfied by showing a mere submission to a claim of lawful authority."Florida v. Royer (1983), 460 U.S. 491, 497.
After reviewing the totality of the circumstances in this case, we must conclude that appellant did not voluntarily consent to the search of his automobile, but had merely submitted to a claim of lawful authority. The record indicates that appellant was awakened by a police officer and was asked numerous question about who he was, why he was there, why his steering column was damaged, and who owned the stereo equipment in the back seat. He answered all of those questions truthfully.
Contrary to the trial court's express findings, the record indicates that two police officers, rather than one, were present when Ptl. Doyle asked appellant's permission to search his car. Additionally, contrary to the trial court's finding, the record indicates that appellant's car was blocked in by the officer's cruiser and could not have been moved. Ptl. Doyle admitted to this. Ptl. Doyle also indicated that although he asked appellant to step out of his car, if appellant had refused the officer's request, Ptl. Doyle "would have probably demanded him." While it is undisputed that appellant signed a "permission to search" form, appellant offered unrebutted testimony that if he had attempted to refuse permission to search, Ptl. Doyle told him that "he would have just called the dogs down there and got a search warrant or whatever he had to do." In other words, appellant testified that he believed that no matter what he did, the car would be searched. Only because appellant believed that he had no choice in the matter did he acquiesce to the officer's request.
Thus, it is apparent that appellant was not free to leave. His automobile was blocked in, two police officers were present, and one of the officers testified that he would have demanded appellant's cooperation. Additionally, it is clear that appellant either believed that he did not have the right to refuse to consent or, at least, that a refusal to consent would have been a meaningless act. Finally, the fact that appellant allegedly "consented" to the search does not comport with the fact that appellant was aware that LSD was in his automobile and that its presence would soon be known to police officers.
Based upon the foregoing analysis, we conclude that the state did not prove, by clear and positive evidence, that appellant freely and voluntarily consented to the search of his vehicle. Hence, without appellant's consent, the search was invalid and should have been suppressed for this reason as well. Appellant's second issue is sustained.
Due to our conclusion regarding appellant's first two issues, appellant's three other issues are moot and need not be addressed. The judgment of the trial court is reversed and the matter remanded for further proceedings consistent with this opinion.
 __________________________________ JUDGE WILLIAM M. O'NEILL
FORD, P.J., NADER, J., concur.